.The Chancellor.
The bill in this cause was filed on the sixth of August, 1845, by Elijah O. Pierson and Edward Cruet against Van Beuren Ryerson for a perpetual injunction to restrain the defendant from proceeding at law to recover the possession of certain real estate in the possession of the complainants and from aliening the title to said lands.
The material averments of the bill, so far as they are necessary to an understanding of the controversy, are as. follow: On the twelfth of May, 1828, Ritchason Buckbee mortgaged to Aaron Peck one acre of land, including the premises in controversy, to secure the payment of $1700. On the twenty-eighth of April, 1829, Buckbee, by deed of bargain and sale for the consideration of $200, conveyed forty-one hundredths of an acre, a part of the mortgaged premises, to Elijah C. Pierson, one of the complainants, and on the same day Peck, the mortgagee, released the premises so conveyed to Pierson from the encumbrance of the mortgage. On the twenty-ninth of April, the mortgage from Buckbee to Peck, with the mortgage debt thereby secured, was assigned by Peck to Charles R. Akers, with notice to Akers of the release of a part of the mortgaged premises. On the twenty-fifth of October, 1829, Peck, being the equitable owner of the lot conveyed and released to Pierson, having opened a street over the premises, conveyed the residue of the lot, by deed of bargain and sale, to Adonijah V. Harrison. On the first of November, 1829, the premises thus released from the operation of the mortgage were divided into two lots, one on Mechanic street, having a front on the Newark road of over forty-three feet, the other having a front of nineteen feet. These lots continued to be held by different owners, and the legal and equitable title eventually became vested in the complainants, Elijah C. Pierson having *183 acquired title to the smaller of the lots in the year 1835, and Edward O. Gruet to the other lot in 1837.
On the third of January, 1844, a bill was filed by Akers for the foreclosure of the mortgage executed by Buckbee to Peck, and a decree obtained for the sale of the entire promises covered by the original mortgage, including the portion released by the mortgagee, and afterwards conveyed to the complainants. On the fourth of August, 1844, the premises were sold under the decree to Buckbee, the original mortgagor. He having relinquished his bid, the premises were again advertised for sale, and, on the twenty-third of December, were struck off to Akers, the complainant in the foreclosure suit, and by his authority conveyed by the sheriff to Eyerson on the tenth of January, 1845.
The defendant claims title to the premises in dispute under a mortgage executed by Ritchason Buckbee to Aaron Peck on the twelfth of May, 1828, and assigned by the mortgagee to Charles R. Akers on the twenty-ninth of April, 1829. In 1844, a decree of foreclosure having been obtained by Akers upon his mortgage, he became the purchaser at the sheriff’s sale under a writ of execution issued upon the decree, and by his authority a deed for the mortgaged premises was executed by the sheriff to Eyerson. He shows therefore, under the mortgage and sheriff’s deed, a legal title to the premises.
It is claimed by the complainants, in their bill, that on the twenty-eighth of April, 1829, after the delivery of the mortgage to Peck, Buckbee, the mortgagor and the owner of the equity of redemption, by deed of bargain and sale, conveyed that part of the mortgaged premises now claimed by the complainants to Elijah O. Pierson with covenants of general warranty; and that by deed of release, executed upon the same day, Peck, the mortgagee, released the premises so conveyed to Pierson from the operation of the mortgage. The deed and release were duly recorded on the thirtieth of April. On the twenty-ninth of April, the day after the conveyance by the mortgagor and the release by the mortgagee to Pierson, Peck, the mortgagee, assigned the debt with the *184 mortgage security to Akers, by. -whom the mortgage was subsequently foreclosed. On the twenty-fifth of October, 1829, the lot released from the operation of the mortgage was conveyed by Peck, by deed of bargain and sale with covenants of general warranty, to Adonijah V. Harrison, from whom the title passed, and by sundry mesne conveyances eventually became vested in the complainants. At the time of the conveyance to Harrison the legal title was not in Peck, but in Pierson, who, it is admitted held as naked: trustee for Peck, in whom the entire beneficial interest was' vested. Both the legal and equitable title became eventually' vested in the complainants. The grantees of Peck, under whom the complainants claim title, continued in the undisturbed possession and enjoyment of the premises, as owners thereof, from 1829 till 1844, when the premises were exposed to sale under a writ of fieri facias issued under the decree of foreclosure. The bill of foreclosure, under which the decree was made and the premises sold, set out the premises as they were described in the original mortgage, including the premises conveyed to the complainants, without reference to the deed of release, and the sheriff’s deed executed to Ryerson conforms to. the description in the bill.
It is difficult to state a stronger case for equitable relief than that made by the complainants in their bill, and which is fully sustained by the evidence in the cause. Their title, adverse to. that of the defendant, originated in 1829, by a deed of bargain and sale from Buckbee, the owner of the equity of redemption, and by a deed of release from the mortgagee,, executed prior to. the assignment of the mortgage to Akers. They, and those under whom they claim, continued in the actual possession and enjoyment of the premises as owners, without a claim of right" on the part of the mortgagee for a period, of nearly fifteen years, and at the time of filing the bill of foreclosure by Akers they had an unquestioned legal and equitable title.
The complainant in the forclosure suit, probably by accident, but whether- by accident or design is immaterial, *185 omitted to set out the release from the mortgagee, and the consequent title of these complainants. The suit was undefended, a decree pro confesso was taken, and land which had been released from the mortgage was decreed to be sold for the payment of the mortgage debt, and was actually conveyed under color of the decree to Ryerson, who thereupon commenced an action of ejectment for the recovery of possession. Under these circumstances, the bill in this cause was filed for an injunction to restrain proceedings at law, which was issued, and has been in force since the fourth of August, 1845, a period of more than sixteen years.
The question now is whether that injunction shall be dissolved, and Ryerson permitted to recover the land under the decree of this court, or whether the injunction shall be declared perpetual.
But it is objected that, whatever equity the complainants might have had, all title to relief has been forfeited by their laches. Pierson was a party to the bill of foreclosure, and suffered a decree pro confesso against him. Both Pierson and Gruet had full knowledge of the character and extent of the decree before the sale by the sheriff; but they permitted the sale to be made without calling the decree in question, and now attack the title of the purchaser. It is urged that this cannot be done; that a decree of the court cannot thus collaterally be called in question, or the title of a purchaser under it be impeached, on the ground of error in the decree, but the appropriate and only remedy of the party was by application to open and correct the decree. It may be conceded, for the sake of the argument, that the general principle is correctly stated, but the evidence clearly exempts the present case from its operation. It is shown, by the evidence both of the assignor and of the assignee, that at the date of the assignment of the mortgage from Peck to Akers, it was distinctly understood that the mortgage, as assigned, did not cover the property in dispute. It does not appear, indeed, by the testimony of either of the witnesses, that Akers was apprized that a release of part of the premises originally *186 covered by the mortgage had been made; but both agree that the fact that the mortgage, as assigned to Akers, did not cover Mechanic street, or the property east of it, was well understood. Mr. Akers distinctly testifies that, although he was ignorant of the boundary lines of the mortgaged premises, and took the assignment relying upon the guarantee of Peck, who was then regarded as responsible, he always understood that the mortgage did not cover the property east of Mechanic street until shortly before the filing of the bill of foreclosure, when he was first informed to the contrary by Buckbee, the mortgagor.
The complainants, in their bill, allege that after the decree of foreclosure, and before the sale under the execution, upon being remonstrated with against proceeding to sell the land claimed by the complainants, he disclaimed all right and title _.to the said land and all intention or expectation of disturbing, the complainants in respect to the same; and relying 'upon:?this assurance, the complainants took no measures to Interrupt the proceedings under the decree and execution.' It appears, from Mr. Akers’ evidence, that he was not satisfied- thMt he had any claim to the property east of the street, and that he declined to, insist upon it; though Buckbee, the .mortgagor-, who, had given a warranty title for the premises, and Byerson, his brother-in-law, who eventually became the purchaser, insisted that the mortgage title covered the premises in dispute. At the first sale by the sheriff Buckbee became the purchaser, and actually received the sheriff’s deed. But it was manifest that he could not disturb the complainants’ title, because they held under his warranty. That sale was abandoned, the deed surrendered, and the premises again advertised for sale.. At the second sale, Akers himself became the purchaser, having previously agreed with a third party to take the property at a valuation made of the land exclusive of the premises now in dispute. Byerson thereupon insisted upon title being made to him, under some pretence of an understanding to that effect; and upon being-threatened by Byerson with litigation for the possession, in *187 the event of refusal to comply with his demands, and upon receiving indemnity from Ryerson that he should not be involved in any expense or difficulty touching the claim for the land east of Mechanic street, Akers finally consented that the premises struck off to him should be conveyed by the sheriff to Ryerson. Mr. Akers expressly testifies that he did not insist upon any claim under his mortgage or decree to the land east of Mechanic street; that ho received no consideration whatever for that land, and that he permitted the deed to be made by the sheriff to Ryerson only upon his urgent entreaty and upon indemnity against any loss upon his part. It is obvious, then, that the rights of the mortgagee under his mortgage and under the decree of foreclosure will bo in no wise prejudiced by granting the relief q>rayed for. He neither claimed nor received any benefit whatever from the decree, so far as it affected the lands released from the operation of his mortgage. He took precisely the same benefit under the sale as if the decree had been in conformity to the claim of the complainants. Hor are the rights of a bona fide purchaser at the sheriff’s sale to bo prejudiced. Ryerson, by his answer, denied all, knowledge of the existence of the release of the promises in question by the mortgagee. The evidence shows satisfactorily that he purchased with full knowledge of the existence of the release and of the claim of the complainants under it. He not only was apprized of the release, but he saw and examined the record. The evidence of Mr. Jackson, the clerk, and Mr. Begbie, the deputy clerk, upon this point is on tirely satisfactory, and loaves no room for doubt. Ryerson purchased to protect no right or interest of his own. Ho had no interest in the property to be protected. He was a mere volunteer, purchasing, it would seem, purely for the purpose of speculation, with his eyes open and with full knowledge of all the equities of the complainants in this suit. The principle relied upon by the defendant cannot bo invoked under such circumstances for the defence of a purchaser having no higher equity than the defendant.
*188 It is further objected that the release of the premises in dispute from the operation of the mortgage executed by Peck, the mortgagee, to Pierson was fraudulent as against Akers, the assignee, being made by Peck in trust for himself and without the knowledge of the assignee. If this objection were made by Akers, the party alleged to have been defrauded, it might be' entitled to consideration. But it was never urged or relied upon by the assignee of the mortgage, and it is not perceived upon what ground Ryerson can claim the benefit of the objection. That Peck defrauded the assignee of the mortgage is no reason why Ryerson should be permitted to enforce an inequitable claim as against bona fide purchasers who acquired title upon the faith of the release. Nor is it by any means certain, from the evidence, that the release to Pierson was either actually or constructively fraudulent. Mr. Akers, the party actually prejudiced by the release, does not so pretend. He states, on the contrary, that on taking the assignment he relied upon the guaranty of Peck, whose personal responsibility was then regarded as good.
Nor is it a circumstance entitled to any weight that Peck has now become a party to the suit, having acquired the interest of Pierson. He acquired title by devise, and is entitled, under the circumstances of the case, to all the protection to which Pierson himself, as a bona fide purchaser, would have been entitled. Nor should it escape observation that Gruet, who has title to the larger and more valuable portion of the premises in dispute, is shown by the evidence to be a bona fide purchaser for value in no wise connected with the transactions of Peck.
The injunction will be declared perpetual. It was stated, upon the argument, that Gruet was dead, and that his interest had vested in his heirs-at-law. I do not find the fact stated in the evidence. Nor does there appear to be any order directing the suit to stand revived in the name of the heirs. If .the fact be as alleged, proper steps should be taken to make the heirs parties before the signing of the decree.